Case number 21-5168 Bretton Westmoreland v. Butler Co KY et al. Oral argument not to exceed 15 minutes per side. Mr. Belsley for the appellant. You may proceed. Thank you Your Honor, may it please the court, my lonely friend and counsel for the defendants, Mr. English. Good morning. I would request to reserve three minutes for rebuttal. Alright. I'm here this morning on behalf of the plaintiff, Mr. Bretton Westmoreland. We believe the district court below erred because it applied to a failure to protect claim, the test of deliberate indifference when Mr. Westmoreland was a pre-trial detainee. It is our contention that the appropriate test given Kingsley and given the ruling of the Ninth Circuit in the Castro v. Los Angeles case in which petition for certiorary was denied by the Supreme Court, that a test of objective unreasonableness should be applied to a pre-trial detainee's failure to protect claim. Are you familiar with our decision in Browner? I am, Your Honor. That case concerns a medical claim. I think that differs from an excessive force and a failure to protect claim. I regard failure to protect as the little brother, if you will, of excessive force and so did the Ninth Circuit. They said it's the same type of constitutional violation, it's the same injury, and for that same reason, Judge Bush, I would urge the court not only to apply the test of objective unreasonableness to a pre-trial detainee's claim of failure to protect, but avoid putting an overlay over that test of recklessness. In Kingsley, the Supreme Court rejected a claim or an instruction that required the jury to find reckless disregard because it re-injected into the test the sort of subjective recognition of the risk that the court was trying to avoid by setting aside deliberate indifference in that case and adopting objective unreasonableness. What the test is in Kingsley in that excessive force case is, number one, it has to be intentional conduct as opposed to inadvertent. I think the court used an example where an inmate is injured because a guard trips and falls on the inmate. That's an example of inadvertence. But we have intent here. We don't have in this case a claim that the jailer didn't know what was going on, wasn't aware of what was going on. We have intent here. The other part of the test in objective unreasonableness that differs from deliberate indifference is there's no requirement of proving that in fact the jailer knew, although we have the facts in this case to do that. What exactly are you saying the jailer here knew what was going on? What exactly were the facts that you're alleging? Two sets of facts, your honor. First of all, the jailer says he can't remember why he asked Mr. Westmoreland, but the jailer claims before he ever heard about the call from Mr. Westmoreland's mother, the jailer claims, he went to Mr. Westmoreland and asked him if he wanted to be removed from his cell. This is Tyree you're talking about? Yes, your honor. There's no evidence to support any other reason that he would ask that question of Mr. Westmoreland other than some sense of appreciation of the risk he was in, having been labeled as a snitch. Now what is the evidence then? I thought Tyree was saying that Mr. Westmoreland told him he did not need to be moved. Was that not the testimony from Mr. Tyree? That's what Mr. Tyree says. Did Mr. Westmoreland contradict that? Yes, Mr. Westmoreland says, I never talked to the jailer. The jailer never talked to me about this. Subsequently, your honor, back to the knowledge, remember he asked Mr. Westmoreland if he wanted to be moved before he heard about the mother's call. After he allegedly asked him that question, he's in his office, he's approached by his jail administrator who says, I've gotten a call from the mother, and the mother is not just a mother. She is well known at the jail because she heads a rehab unit in the community that the jail often deals with. So this is a credible source. She tells, she expresses her concern about her son's safety, and she explains why. She says there's an inmate that told all of his cellmates he's a rat. Ms. McMillan says, I went in there and told Jailer Tyree, and I wrote down her number on a yellow sticky pad and gave it to him. Jailer Tyree admits all of that, but then he says, I didn't do anything. I didn't go back and talk to Mr. Westmoreland, I didn't have him, preferably, I didn't have him brought to my office so we could have a private conversation outside the earshot of his cellmates. And just from Mr. Tyree's perspective, he's saying that he'd already had a conversation with Mr. Westmoreland. But Mr. Westmoreland said it didn't happen. There's a clear dispute of genuine issue and material fact, Your Honor. Do you remember from the record how much time elapsed between the mother's call expressing concern about her son's safety and when the assault occurred? I can't give you a precise hour, Your Honor. I think her call occurred in the morning and then late that night was when the assault occurred. Now, the other problem with what Jailer Tyree did, was in addition to not doing anything after hearing about the mother's call, he didn't put any precautions in place. He didn't even summon his shift supervisor and say, keep your eye open. Was Mr. Tyree involved in the earlier segregation of Mr. Westmoreland from St. Clair? St. Clair was the inmate who was the instigator of it all? Yes, sir. Okay. Weren't they segregated initially by the jail? They were. Was Mr. Tyree involved in that decision making? No. That was just purely classification. That was purely done by the Jailer's classification officer. Mr. Tyree wasn't involved in that. But then what happened, as Your Honor knows, is Mr. St. Clair was nonetheless permitted to mop floors outside the cell when Mr. Westmoreland... Was Mr. Tyree involved in that decision of allowing Mr. St. Clair to mop floors outside the cell? I don't believe so, Your Honor. I don't think that's a decision that he makes. I think, again, that's handled by his subordinates. So the evidence is that, according to Mr. Westmoreland, Mr. Tyree was told about his Yes. Yes. And his testimony... So is it your position then that a Jailer, any time he receives notice from anyone about an inmate who expresses concern about their jail cell inmates causing harm, they have to be moved? No, Your Honor, but in a case where an inmate is labeled as a rat or a snitch, that inmate and the courts recognize that inmate is at a substantial risk of harm, just by nature of the prejudice against informants. Isn't that a fairly common thing to have informants in jails? No. No, Your Honor. There's often times in cases where individuals testify up against other individuals, things they hear in jails. That's not that uncommon, is it? Well, it depends on what you would say in terms relative to the inmate population. It is, in my experience, very uncommon. And it's important in this case, I think, to remember the degree to which security in our jails and in our prisons depends upon inmates being willing to disclose, which they often are not. But when you have an inmate who is willing to disclose what happened, may offer authority and protection. Let me back up to what you're saying our standards should be for the intent prong. Are you indicating it should be just a negligence standard for reviewing this type of a claim? No, Your Honor. The Supreme Court distinguished that in Kingsley. They said it is distinguished from negligence by the requirement of an intentional act as opposed to an inadvertent act. You're saying the intentional act was that Tyree knew about the mom's call and didn't do anything. Didn't do anything. Never did anything, Your Honor. We dispute that he ever talked to Mr. Westmoreland. Mr. Westmoreland said he didn't. And that is a direct conflict in the evidence. You've got one witness saying one thing, another witness saying another, and under summary judgment standards, the tie goes to the plaintiff. And so it should have been, summary judgment should have been denied for that reason. I think it's important, now with the court, there was also a serious error by the court. And it's requirement that, or it's finding, that assuming all that's true, Mr. Tyree didn't do anything wrong because nobody told him where, who the inmate was that was going to assault Mr. Westmoreland. That's never been a requirement of the courts. Never. And, you know, you're never going to have informants if you're going to expect them to tell the warden beforehand who the inmate is who's going to shank him in the yard. Finders very clear, if you know there is a substantial risk to an inmate posed by the inmate population as a whole, classic example, an informant, then you have to act. And in this case, the evidence supports a reasonable jury's finding that Jailor Tyree did nothing. Thank you, Your Honor. Well, thank you. May it please the court, my name is Buzz English, Mr. Belsley. I represent Jailor Rocky Tyree. Assuming the facts in the light most favorable to the plaintiff, you have a situation with Rocky Tyree, that he got a, was informed of a call from Tanya Sublett, who said that the inmate Jerry St. Clair was on the floor and causing problems with Mr. Westmoreland. At that time, even if you assume that there was not this conversation, but in the light most favorable to the plaintiff, and the plaintiff in this case had said, Jailor Tyree never talked to me, what Jailor Rocky Tyree did was make sure that Mr. St. Clair was in fact Is there testimony from Jailor Tyree about his thought processes or decision making once he heard of this call, or learned of this call from Ms. Sublett? The thought process from his standpoint was he did testify that he had just been back to the cell and had talked to Mr. Westmoreland, and Mr. Westmoreland said that, I'm okay, I'm fine. His thought process was, St. Clair is in another cell. Did he actually testify to that though, that he understood St. Clair was in another cell and that he felt he was safe because of this? Well, he felt that because of his conversation, and because he knew that St. Clair was in another cell, he did testify that it is possible that St. Clair could have been out in the So, there's no dispute between the parties that Jailor Tyree knew that St. Clair was in a different place than Westmoreland? Correct, there is no dispute, J. St. Clair was not in Mr. Westmoreland's cell, and was at no time in Mr. Westmoreland's cell. And what was Jailor Tyree told about the call from Ms. Sublett? He was, according to the note, and according to the testimony, he was told that inmate St. Clair had been in the hall causing problems. He was yelling into the cell. The Butler County Jail is set up so that there's a hall, there's what's called a bullpen area, which is a small area where you can look into the cell, and then there's actually the cell door, and then there are eight inmates who are then housed in this single room. It is possible that inmate St. Clair could have been mopping in the floor, and may have yelled into the cell or something about that, but given the fact that he... Is that in the note that he read? The inmate said, in the note said, I asked why, she said, Inmate Jerry St. Clair had told the inmates in the cell that Bretton was a, quote, rat. She said, Inmate Jerry St. Clair was on the floor and he was causing problems. He is on the floor. I spoke with Jailor Rocky Tyree and explained the issue. I gave him a sticky note with the phone number of the mother and asked him to call her. What Jailor Tyree then made sure is that inmate St. Clair was then put in, was segregated in another cell so that he couldn't cause any more problems, and given the fact from his thought process that he had been back and everything was fine. How many inmates were in the cell with Mr. Westmoreland when the incident occurred? Seven, I believe. And is that normal? It's normal. It's a normal for that cell. Remember, this happens at 10 o'clock in the morning. The incident that occurred didn't occur until maybe 12 o'clock that night. In the interim, regardless of what standards you apply, when you look at this from the standpoint of Jailor Tyree, he didn't have any other notice and neither did Inmate Westmoreland ever come up and say, hey, I'm in danger, I need to be transferred. Isn't there some testimony that Mr. Westmoreland at around 6 o'clock said something to someone at the jail that he wanted to be out of the cell? He said that the inmates are getting on my nerves, can you transfer me to another cell? And it was responded, the response was, we can't just transfer you to another cell because someone else is getting transferred. Was Tyree informed of that conversation at 6 o'clock? He was not. He was not. He did not know of that incident. Does Mr. Westmoreland dispute how you characterized what he said to the official at 6 o'clock? He says that he did say that I was in danger, but understand, we have to look at this from the standpoint of Jailor Tyree, there is no dispute that Jailor Tyree did not know. So the 6 p.m. really isn't relevant to Tyree's knowledge? I don't think it is. But what is more important is when you look at the record and understand this other inmate, Mr. Mellican was the inmate who actually struck him, when questioned in his deposition about Mr. Westmoreland, when I asked about Mr. Mellican, I specifically asked the question, before the incident on June 5th when you were struck by Mr. Mellican, had you ever specifically submitted a request to be transferred to another cell? This is on page 116, no. Had you ever said to a jail person, I feel in such danger that I want to be moved some place else, answer before the incident, question yes, answer no. Before Mr. Mellican struck you that evening, he had not physically threatened you in any way? No. If Mr. Mellican doesn't know, and if Mr. Westmoreland doesn't know, and hasn't informed the jail that he is at least in fear of his life, or that there is some danger, then how is it that we can say either applying an objective test or a subjective test that... What authority do you think for how we decide the subjective aspect of the jailer's, Tyree's behavior? I'm aware of your decision in the Bush case, which basically... The Browner case, you mean? Well, the Browner case. But in Browner, it said, in Browner, Browner was a failure to treat. The test that is applied is that there has to be more than negligence. It has to be a reckless knowing such that either it is so reckless that the defendant either knew, or the facts are so obvious that he should have known of the situation. And in this particular case... You're contending even under the Browner test that there is qualified immunity here? I am. I am. And exactly why is that? What are you... How are you saying that that test is not satisfied of recklessness? Because in this particular case, there was no knowledge that Mr. Malkin was going to talk... Or was going to attack Mr. Westmoreland. There was no indication by Jailer Tyree that this incident was going to occur some 12 to 13 hours later. There was no evidence that Mr. Westmoreland had felt that he was in any danger that was communicated to the jail. All we have here is a 10 a.m. from Rocky Tyree's standpoint. He gets a call from a mother saying, I'm concerned about my son because an inmate that's in another... We do have the problem that if we're only using the objective standard in determining deliberate indifference, the behavior of the jailers and the guys in particular here would be reviewed much differently than if we rounded the subjective standard or both the subjective and the objective. But don't we have a problem here since the district court actually did not follow the standard set out in Browner. In other words, he didn't follow the objective standard here. He decided the case based at least in part on the subjective standard. Judge Clay, you're correct, but obviously the Browner decision was just rendered last month and this decision was back... I think what Judge Clay is getting at is, can we go ahead and review this case under Browner or do we need to remand it to the district court to have the district court look at it again under Browner? This court has the authority to review the case de novo and so I would say that you do have the authority... Doesn't it make a great deal more sense, Mr. English, to send it back to the district court for application of the Browner test? I mean, we do have this rather, we have a factual dispute here about whether Mr. Tyree ever had a conversation with Mr. Westmoreland about his being removed out of his cell and probably the district court is in the best position to determine whether that makes a difference if the standard is not what the district court thought it was. That is obviously an option that this court has is to remand it back and ask that it be reviewed. We believe and I would contend and advocate that the facts are such and that this court is in a position where it too could review the record and to determine that even if you apply the Browner test that the plaintiff has not met that standard and that Rocky Tyree is entitled to immunity in this particular case. Obviously the court has either option and that is something that admittedly the court could do but we feel that this case is in a position to make that same finding. Any other questions that I may answer? Certainly not, I think you have your argument at hand. Thank you sir, I appreciate it. We don't have rebuttal. Just a few points your honors. First of all, Judge Bush you asked about whether Mr. Westmoreland's encounter with the guard Jesse was relevant. It is relevant and it is relevant because had Jesse, had Mr. Tyree, even if he didn't want to talk to Mr. Westmoreland again, had he simply told his subordinates keep an eye on this guy. If there is something that comes up, call me, whatever. He didn't do that. And so when Mr. Westmoreland approaches Jesse, he claims that he's just complaining about his cellmates and we don't move you just because cellmates are getting on your nerves. This raises another issue just about the realities of carcerative life for a snitch, an informant. When you're in the position Mr. Westmoreland was in, you're in a catch-22, particularly when Jailer Tyree, if you accept his testimony that he did talk to Mr. Westmoreland, he's talking to him in front of his cellmates. An informant doesn't want to say, these people are threatening me, blah, blah, blah. That's viewed as informing. So you put somebody like Mr. Westmoreland, and this is why we have the expert testimony that says there's various ways of getting to the meat of this, without asking an inmate whether he needs to be moved because his cellmates are threatening him. It puts the person in the position of either saying, yeah, I'm an informant and I'm informing on you now, or taking the risk and hoping that nothing happens. The best example of this was even after Mr. Westmoreland was attacked, he was reluctant to tell the Jailer what happened because he didn't know whether he was going to be moved or not, even then. So if there's no further questions, I'll conclude my argument. Thank you. Thank you very much. We would thank both sides for their arguments, and the case is submitted, and opinion will be forthcoming in due course. Thank you very much, and the Clerk may call the next case.